**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SHANIKA THOMAS,                     ) | |
|                               ) | |
|     Plaintiff,                   ) | Case: 1:25-cv-01926 |
|                               ) | |
|     v.                          ) | |
|                               ) | |
| UNITED SERVICE COMPANIES     ) | |
| HOLDINGS, LLC d/b/a UNITED SERVICE     ) | |
| COMPANIES,                 ) | Jury Trial Demanded |
|                               ) | |
|     Defendant. | |

## COMPLAINT

Plaintiff, Shanika Thomas ("Plaintiff"), by and through the undersigned counsel, hereby files this Complaint against United Service Companies Holdings, LLC d/b/a United Service Companies ("Defendant"), and in support states as follows:

## NATURE OF PLAINTIFF'S CLAIMS

1. This lawsuit further under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*. ("Title VII"), seeking redress for Defendant's discrimination and harassment on the basis of Plaintiff's sex and Defendant's retaliation against Plaintiff for engaging in protected activity under Title VII.

2. This lawsuit arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*. ("Title VII") and 42 U.S.C. §1981 ("Section 1981") seeking redress for Defendant's race-based discrimination, race-based harassment, and retaliation under Title VII and Section 1981.

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 as Title

VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5 *et seq*. and 42 U.S.C. §1981 are federal statutes.

4.      Venue in this district is proper under 28 U.S.C. §1391(b) as a substantial portion of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## ADMINISTRATIVE PREREQUISITES

5.      All conditions precedent to jurisdiction under the Title VII and 42 U.S.C. §1981 have been satisfied.

6.      A charge of employment discrimination was filed by the Plaintiff with the Equal Employment Opportunity Commission ("EEOC") (Attached hereto as Exhibit "A").

7.      Plaintiff received a Notice of Right to Sue from the EEOC (attached hereto as Exhibit "B"), and Plaintiff filed this lawsuit within ninety (90) days of Plaintiff's receipt of the EEOC's Notice of Right to Sue.

## PARTIES

8.      Plaintiff is a natural person, over 18-years-of-age, who at all times relevant resided in Chicago, Illinois.

9.      Defendant is a corporation that specializes in providing cleaning, staffing, and security services.

10.      Plaintiff was employed by Defendant as an "employee" within the meaning of 42 U.S.C §2000e(f).

11.      During the applicable limitations period, Defendant has had at least fifteen employees, has been an "employer" as defined by Title VII, and has been engaged in an industry affecting commerce within the meaning of and Title VII, 42 U.S.C. § 2000e(b).

## BACKGROUND FACTS

12. Plaintiff was hired by Defendant as Director of Housekeeping on or around June 24, 2024 until her unlawful termination on or about January 8, 2025.

13. Since at least June 24, 2024 through January 8, 2025, Defendant has subjected Plaintiff to different terms and conditions of employment than others not within Plaintiff's protected class and Plaintiff has been subjected to a hostile work environment on the basis of race and sex, violating Title VII and Section 1981.

14. Plaintiff is African American and is a member of a protected class because of her race whom Defendant subjected to different terms and conditions of employment than others not within her protected class.

15. Plaintiff was one of only a few African American female employees employed by Defendant.

16. Plaintiff is female and is a member of a protected class because of her sex.

17. From in or around the start of Plaintiff's employment, Plaintiff's superior, assistant general manager Rick (LNU) (Caucasian, male), began sexually harassing Plaintiff and engaging in racially discriminatory conduct against her.

18. Rick and other coworkers routinely called Plaintiff names other than her name, including "Shakira," "Shanisha," and "Neshia."

19. These harassing names alluded to Plaintiff's race, African American.

20. As the names Rick and other coworkers used for Plaintiff were alluding to Plaintiff's race on account of her African American background, the comments are inherently tied to her protected class status.

21. Plaintiff opposed this racially discriminatory conduct by sending an email clarifying that her name is "Shanika," in response to an email calling her "Shakira."

22. Plaintiff included management on the email clarifying her name in order to put management on notice of the race-based discrimination, thereby engaging in protected activity as Plaintiff was protesting prohibited treatment on the basis of her race to a superior; notably, the supervisor who was perpetrating the race-based harassment and management personnel.

23. Further, as this conduct was perpetrated by a superior, Defendant was effectively on-notice of race-based discrimination and harassment or should have known of its occurrence by virtue of it being perpetrated by its agent, Rick.

24. Despite this clarification, Rick and other coworkers maintained their race-based discrimination against Plaintiff by continuing to call her racially discriminatory names.

25. Rick also called Plaintiff inappropriate pet names, such as "princess," "cupcake," and "sprinkles."

26. These harassing names alluded to Plaintiff's sex, female.

27. Plaintiff opposed these inappropriate pet names by not responding when Rick used them with her.

28. As the pet names Rick used for Plaintiff were alluding to her sex on account of her female identity, the comments are inherently tied to her protected class status.

29. Plaintiff feared reporting Rick's discriminatory conduct against her to her superior, general manager Richard (LNU), because Richard was Rick's best friend at work.

30. However, Plaintiff overcame her fear and reported to Richard Rick's use of names other Plaintiff's name.

31. This constituted protected activity, as Plaintiff reported prohibited treatment on the basis of her race and sex to a superior; notably, the general manager.

32. Richard dismissed and failed to engage Plaintiff's report of race-based and sex-

based discrimination and harassment, thereby allowing the race-based and sex-based discrimination and harassment to continue.

33. In or around July 2024, Rick incessantly called Plaintiff almost every day to confirm that the building was closed, despite receiving notifications directly to his phone about when the building was closed.

34. In reality, Rick called Plaintiff under the guise of work to speak with her about unrelated matters.

35. Rick spent approximately thirty minutes on the phone with Plaintiff during each phone call, a majority of which he spent discussing matters unrelated to work.

36. On at least one of these phone calls, Rick asked Plaintiff out on a date, making Plaintiff highly uncomfortable.

37. That same month, Rick made sexually harassing comments to Plaintiff, speaking to her about "anal," "sex," and "blow jobs."

38. These harassing comments were unwelcomed.

39. When Rick made these harassing comments, Plaintiff opposed them by walking out of the room and ignoring the comments Rick directed at her to indicate that the discriminatory conduct was unwelcome.

40. These harassing comments alluded to Rick's unwelcomed sexual desires toward Plaintiff.

41. As Rick was alluding to intercourse with Plaintiff on account of her sex, the comments are inherently tied to her protected class status.

42. Further, as these remarks were perpetrated by a superior, Defendant was effectively on-notice of sex-based discrimination and sexual harassment or should have known of its

occurrence by virtue of it being perpetrated by its agent, Rick.

43. In or around September 2024, Rick made another inappropriate comment to Plaintiff about "anal."

44. Plaintiff promptly reported Rick's conduct to Richard, thereby engaging in protected activity.

45. Richard laughed at Rick's inappropriate comment, seemingly amused, and threatened Plaintiff with, "You are lucky that we are Human Resources."

46. Richard dismissed and failed to engage Plaintiff's concern of sex-based discrimination and harassment, thereby allowing the sex-based discrimination and harassment to continue.

47. Plaintiff, unable to bear Rick's sexual harassment and race-based discrimination and harassment, attempted to avoid seeing Rick to the extent that she could.

48. Plaintiff intentionally attempted to schedule herself to work on the days she believed Rick would not be working, and attempted to schedule herself to be off of work on the days she believed Rick would be working.

49. Fearing retaliation by Richard for reporting Rick's conduct against her, Plaintiff also attempted to schedule herself on days she believed Richard would be working, in order to provide him an opportunity to observe her doing her job.

50. Despite her best efforts to schedule herself away from Rick, Plaintiff was unable to fully avoid him, and was still scheduled to work with him.

51. On or about November 1, 2024, Rick physically pressed his body against Plaintiff's, placing his penis on her back.

52. Plaintiff feared further retaliation if she reported this incident, given Richard's close relationship with Rick, Richard's previous threat to Plaintiff, and his dismissal of and failure to

6

engage her previous concerns of discrimination.

53. However, as this conduct was perpetrated by a superior, Defendant was effectively on-notice of sex-based discrimination and sexual harassment or should have known of its occurrence by virtue of it being perpetrated by its agent, Rick.

54. On or about November 3, 2024, Rick made inappropriate sexual comments to Plaintiff, telling her, "Your booty looks good."

55. On or about November 14, 2024, Rick told Plaintiff, "I dropped my donut. Can you look between my legs, do I have powder down there?"

56. When Plaintiff looked to check if Rick had donut powder on his pants, she found Rick pants tightened against his groin to expose the imprint of his testicles.

57. On or about that same day, Plaintiff attempted to engage in protected activity by calling and texting Human Resources (HR) representative, Toni (LNU) to report Rick's sex-based discrimination and sexual harassment.

58. However, Toni did not return any of Plaintiff's multiple calls and text messages, thereby preventing Plaintiff from engaging in protected activity.

59. However, as this conduct was perpetrated by a superior, Defendant was effectively on-notice of sex-based discrimination and sexual harassment or should have known of its occurrence by virtue of it being perpetrated by its agent, Rick.

60. On or about November 15, 2024, Rick again spoke with Plaintiff in a sexually suggestive manner.

61. Plaintiff was highly uncomfortable and severely distressed by Rick's continued sexual harassment and Defendant's continued failure to address Rick's discriminatory and offensive conduct.

62. On or about December 5, 2024, Plaintiff again attempted to engage in protected activity and report Rick's conduct to Richard.

63. However, Richard avoided Plaintiff by taking long absences and not responding to Plaintiff's attempts to reach him, thereby preventing her from engaging in protected activity by avoiding her.

64. However, as this conduct was perpetrated by a superior, Defendant was effectively on-notice of sex-based discrimination and sexual harassment or should have known of its occurrence by virtue of it being perpetrated by its agent, Rick.

65. On or about December 8, 2024, Rick asked Plaintiff the highly inappropriate and sexually explicit question, "Do you like anal?"

66. On or about December 10, 2024, Rick told Plaintiff an inappropriate story about his niece, "eating a guy's booty," which Plaintiff found deeply disturbing and highly inappropriate.

67. Rick continued his sexually explicit commentary by telling Plaintiff, "I don't like eating booty, I like anal."

68. Rick supplemented his sexual harassment with racial discrimination, telling Plaintiff, "I know how African American girls get down."

69. Plaintiff, both utterly revolted and highly offended, opposed this sexual harassment and racial discrimination by asking Rick, "What's that supposed to mean?"

70. On or about December 16, 2024, Rick made sexual advances toward Plaintiff, despite her clear discomfort and opposition to his discriminatory conduct.

71. On or about December 20, 2024, Rick continued his sexual harassment by asking Plaintiff out on a date.

72. On or about December 24, 2024, Rick explicitly requested sexual favors from

Plaintiff and told her he needed to relieve some stress.

73. Rick asked Plaintiff, "Can you help me? It's not going to hurt," in reference to Plaintiff providing Rick sexual favors.

74. Plaintiff, disgusted by Rick's violative request, refused to engage in sexual conduct with Rick.

75. Despite Plaintiff's clear refusal of Rick's sexual advances, Rick continued to sexually harass Plaintiff.

76. On or about December 31, 2024, Rick told Plaintiff that he was not having sex with his wife, adding a suggestive, "A man needs sex," to again egg Plaintiff into having sex with him.

77. Plaintiff maintained her previous refusal and again did not engage in sexual conduct with Rick.

78. On or about January 5, 2025, Plaintiff supervised Rick's son at work.

79. Rick's son did not perform his job duties effectively.

80. Plaintiff reported Rick's son's poor job performance to Rick.

81. Rick became enraged and angrily threatened Plaintiff with, "If you want to keep your job, you need to give me a blow job."

82. Plaintiff opposed Rick's wrongful threat with, "Do I look like a sex toy to you?" and by leaving the room.

83. Rick's offensive and unsettling threats amplified the severe mental anguish and extreme distress Plaintiff already suffered from Rick's sex-based discrimination, sexual harassment, race-based discrimination, and race-based harassment.

84. That same day, Plaintiff attempted to engage in protected activity and report Rick's conduct to Richard.

85. However, Richard disregarded Plaintiff's acute concerns and told her he did not want to discuss the matter, thereby preventing Plaintiff from engaging in protected activity.

86. However, as this conduct was perpetrated by a superior, Defendant was effectively on-notice of sex-based discrimination and sexual harassment or should have known of its occurrence by virtue of it being perpetrated by its agent, Rick.

87. On or about January 8, 2025, Plaintiff was terminated for allegedly having an "attitude."

88. Defendant's characterization of Plaintiff as having an "attitude" furthered a racial stereotype against Plaintiff, as having an "attitude" is a common stereotype about African American women.

89. This characterization of Plaintiff's personality alluded to Plaintiff's race, African American.

90. As the Defendant's characterization of Plaintiff's "attitude" alluded to Plaintiff's race on account of her African American background, the characterization is inherently tied to her protected class status.

91. That same day, Plaintiff reported Rick's conduct against her to Defendant's Human Resources (HR) department, thereby engaging in protected activity.

92. Further, Plaintiff reported Rick's conduct against her to the police department, as she felt threatened by Rick's behavior and Defendant's failure to address Rick's conduct against her.

93. Notably, no other similarly situated employee outside Plaintiff's protected classes were subjected to the harassing and discriminatory conduct experienced by Plaintiff.

94. For instance, Plaintiff's Arab female coworker and her Caucasian male coworker

made mistakes at work and fell asleep on the job, but were not terminated.

95. By contrast, Plaintiff met or exceeded performance expectations, as evidenced by her receipt of a certificate recognizing her excellent work performance.

96. Prior to her termination, Plaintiff received no indication that her termination was forthcoming except when Rick threatened her employment status in an attempt to force Plaintiff into doing sexual favors for him; thus, Defendant's termination of Plaintiff's is linked to her opposition of sex- and race-based treatment.

97. As such, this unlawful termination was done in retaliation for rebuking Rick's unwelcomed romantic and sexual efforts towards Plaintiff on account of her sex (female) and race (African American).

98. Ultimately, on or about January 8, 2025, Plaintiff was terminated on the basis of Plaintiff's sex (female) and race (African American).

99. Ultimately, Plaintiff was retaliated against, and her employment was ultimately terminated for opposing unlawful discrimination and for exercising her protected rights.

100. Plaintiff reported the race-based discrimination and/or harassment to Defendant.

101. Plaintiff was targeted for termination because of her race.

102. Plaintiff opposed the sex- and race-based discrimination and/or harassment to her superior, Richard, and to HR.

103. Plaintiff was targeted for termination because of her sex and reporting of illegal activity.

104. Plaintiff suffered multiple adverse employment actions, including but not limited to termination.

105. There is a basis for employer liability for the race-based harassment that Plaintiff

was subjected to.

106. There is a basis for employer liability for the sexual harassment that Plaintiff was subjected to.

107. Plaintiff can show that she engaged in statutorily protected activity – a necessary component of their retaliation claim – because Plaintiff lodged complaints directly to her manager about the harassment.

**COUNT I**
**Violation of 42 U.S.C. § 1981**
**(Race-Based Discrimination)**

108. Plaintiff repeats and re-alleges paragraphs 1-107 as if fully stated herein.

109. Section 1977 of the Revised Statutes, 42 U.S.C. § 1981, as amended, guarantees persons of all races, colors, and race the same right to make and enforce contracts, regardless of race, color, or race. The term "make and enforce" contracts includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

110. Defendant's conduct against Plaintiff's race amounts to a pattern or practice of systemic discrimination that constitutes illegal intentional race discrimination in violation of 42 U.S.C. Section 1981.

111. Plaintiff was subjected to and harmed by Defendant's systemic and individual discrimination.

112. Defendant's unlawful conduct resulted in considerable harm and adverse employment actions to Plaintiff and is entitled to all legal and equitable remedies under Section 1981.

113. As a direct and proximate result of the race-based discrimination described above,

Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT II
### Violation of Title VII of the Civil Rights Act of 1964
### (Race-Based Discrimination)

114. Plaintiff repeats and re-alleges paragraphs 1-107 as if fully stated herein.

115. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's race, in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

116. Plaintiff met or exceeded performance expectations.

117. Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

118. Defendant terminated Plaintiff's employment on the basis of Plaintiff's race.

119. Plaintiff is a member of a protected class under the Title VII, due to Plaintiff's race.

120. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

121. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered, and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT III
### Violation of Title VII of The Civil Rights Act of 1964
### (Race-Based Harassment)

122. Plaintiff repeats and re-alleges paragraphs 1-107 as if fully stated herein.

123. By virtue of the conduct alleged herein, Defendant engaged in unlawful

13

employment practices and subjected Plaintiff to race-based harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

124. Defendant knew or should have known of the harassment.

125. The race-based harassment was severe or pervasive.

126. The race-based harassment was offensive subjectively and objectively.

127. The race-based harassment was unwelcomed.

128. Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, due to Plaintiff's race, African American.

129. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

130. As a direct and proximate result of the race-based harassment described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

131. Defendant's retaliatory conduct toward Plaintiff illustrated a willful and/or reckless violation of Title VII.

132. As a direct and proximate result of the above-alleged willful and/or reckless acts of Defendant, Plaintiff has suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

**COUNT IV**
**Violation of Title VII of the Civil Rights Act**
**(Sexual Harassment)**

133. Plaintiff repeats and re-alleges paragraphs 1-107 as if fully stated herein.

134. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices and subjected Plaintiff to sexual harassment, in violation of Title VII of the

Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

135. Defendant knew or should have known of the harassment.

136. The sexual harassment was severe or pervasive.

137. The sexual harassment was offensive subjectively and objectively.

138. The sexual harassment was unwelcomed.

139. Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, due to Plaintiff's sex, female.

140. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

141. As a direct and proximate result of the sexual harassment described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer mental anguish, distress, humiliation and loss of enjoyment of life.

**COUNT V**
**Violation of the Title VII of the Civil Rights Act of 1964**
**(Sex-Based Discrimination)**

142. Plaintiff repeats and re-alleges paragraphs 1-107 as if fully stated herein.

143. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's sex, in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

144. Plaintiff met or exceeded performance expectations.

145. Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

146. Defendant terminated Plaintiff's employment on the basis of Plaintiff's sex.

147. Plaintiff is a member of a protected class under the Title VII, due to Plaintiff's

15

sex.

148. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

149. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits, and has suffered and continues to suffer mental anguish, distress, humiliation and loss of enjoyment of life.

**COUNT VI**
**Violation of Title VII of the Civil Rights Act**
**(Retaliation)**

150. Plaintiff repeats and re-alleges paragraphs 1-107 as if fully stated herein.

151. Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.

152. During Plaintiff's employment with Defendant, Plaintiff reasonably complained to Defendant about sexual harassment and/or sex-based discrimination.

153. As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*

154. In response to Plaintiff's complaint, Defendant failed to conduct a prompt, thorough and objective investigation of Plaintiff's complaint of sexual harassment or sex-based discrimination.

155. Defendant also failed to take necessary precautions to prevent further recurrences of the discriminatory and harassing conduct complained of by Plaintiff.

156. Plaintiff suffered an adverse employment action in retaliation for engaging in protected activity.

157. By virtue of the foregoing, Defendant retaliated against Plaintiff based on reporting the sexual harassment or sex-based discrimination, thereby violating the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

158. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

159. As a direct and proximate result of the retaliation described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer mental anguish, distress, humiliation and loss of enjoyment of life.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court find in Plaintiff's favor and against Defendant as follows:

a. Back pay with interest;

b. Payment of interest on all back pay recoverable;

c. Front pay;

d. Loss of benefits;

e. Compensatory and punitive damages;

f. Reasonable attorneys' fees and costs;

g. Award pre-judgment interest if applicable; and

h. Award Plaintiff any and all other such relief as the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Dated: February 24, 2025

Respectfully submitted,

/s/ *Peyton M. Paschke, Esq.*
Peyton M. Paschke, Esq.
IL Bar No.: 62587
SULAIMAN LAW GROUP LTD.
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone (630) 581-5450
ppaschke@sulaimanlaw.com
*Attorney for Plaintiff*

18